UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH SOSLAU a/k/a : | |
| ELIZABETH COUNTER : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 06-1422 |
| PHH MORTGAGE CORP., f/k/a : | |
| CENDANT MORTGAGE CORP., ET AL. : | |

**SURRICK, J.**                                                                                                  **JULY 18, 2008**

## MEMORANDUM & ORDER

Presently before the Court is the Motion of Defendants PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation and Cendant Preferred Mortgage, LLC n/k/a PHH Preferred Mortgage LLC's Motion to Dismiss Plaintiff Elizabeth Soslau's Amended Complaint, (Doc. No. 5). For the following reasons, Defendants' Motion will be granted as to Count I of the First Amended Complaint.[1]

**I.     BACKGROUND**

Plaintiff's First Amended Complaint alleges, *inter alia*, that Plaintiff and her former husband, Christopher Counter, were referred to Defendant Cendant Preferred Mortgage ("CPM") by their real estate agent to assist them in procuring a purchase money mortgage for their first home. (Doc. No. 4 at 4.) In or around April 2004, Plaintiff began working with Kathryn Sellers ("Sellers") of CPM, who assisted Plaintiff in obtaining a mortgage through CPM. (*Id.*)

---

[1] Count I alleges a federal claim for violation of the Equal Credit Opportunity Act ("ECOA"). Count II alleges a state law claim for Fraudulent Misrepresentation. Count III alleges a state law breach of contract claim. Count IV alleges a violation of Pennsylvania's *Dragonetti Act*, 42 Pa. C.S.A. § 8351 *et seq.* Count V alleges violations of the Pennsylvania Consumer Protection Law.

On or about April 28, 2004, Plaintiff contacted Sellers by telephone and requested a pre-approval letter to allow Plaintiff to place a bid to purchase a house. (*Id.*) Sellers replied via e-mail requesting that Plaintiff and her husband complete a "preapproval sheet" to obtain mortgage estimates. (*Id.* at 5.) The letter from Defendant Cendant was provided to Plaintiff by Sellers on April 28, 2004. (*Id.*) Sellers also provided Plaintiff with various loan products offered by Defendant Cendant and provided Plaintiff with estimates of monthly payments for each product. (*Id.*)

On or about April 29, 2004, Plaintiff's offer on the house was accepted and the Agreement of Sale, designating May 28, 2004, as the closing date, was provided to Sellers. (*Id.*) Plaintiff completed a "Homebuyer Questionnaire" for her mortgage, indicating that Counter was not an American citizen. (*Id.*) Neither Sellers nor anyone from Defendant Cendant questioned Counter's citizenship or his status as a permanent resident alien, but on April 30, 2004, Sellers made a request for Plaintiff's employment history information and asked for some additional information on May 3, 2004. (*Id.*)

On May 3, 2004, Sellers provided Plaintiff with mortgage payment information for Defendant Cendant's 100% financing product at $1212.42 per month, including taxes, insurance and PMI. (*Id.*) On or about May 7, 2004, Sellers notified Plaintiff that she had been approved and that the loan package for the 100% financing product was being sent to her for her signature. (*Id.* at 6.) On or about May 13, 2004, Sellers contacted Plaintiff via e-mail and informed her that underwriting at Cendant "was having a problem with her former husband," but that the loan would still close by May 28, 2004. (*Id.*) On or about May 17, 2004, Plaintiff received word from Sellers that she actually qualified for the mortgage on her own and that she should obtain

the loan in her name only.  (*Id.*)  Sellers advised Plaintiff that the loan structure would remain the same with the same monthly payments.  (*Id.*)

On or about May 24, 2004, Sellers notified Plaintiff that she did not qualify for the same mortgage on her own after all.  (*Id.*)  On or about May 25, 2004, Sellers informed Plaintiff via e-mail that there was another loan program she would need to consider, though it would have higher monthly payments.  (*Id.*)  In the same e-mail, Sellers "apologized" to Plaintiff.  (*Id.*)  On or about May 26, 2004, Sellers contacted Plaintiff again via e-mail and informed her that based on her creditworthiness, she was approved for a loan program that provided for a monthly payment of $1545.99 with a fixed rate of interest for the first five years and an adjustable rate of interest thereafter.  (*Id.* at 6-7.)  In addition, the e-mail stated "I am also offering to refinance your loan for free . . . I know that this is not something you could have controlled, unfortunately we have to get you closed by Friday for a lot of reasons, the most important being a place for you to live."  (*Id.* at 7.)  Plaintiff closed on the new house on May 28, 2004.  (*Id.*)  Plaintiff decided to close on the loan based on Sellers's representation that she would be able to refinance her mortgage for lower monthly payments and a lower interest rate.  (*Id.*)

On or about June 3, 2004, Plaintiff contacted Sellers and requested refinancing options and payment estimates on monthly mortgage payments.  (*Id.*)  Sellers advised that there were no estimates available at that time but that she would be able to refinance her mortgage before September 2004, and would only have to pay July, 2004, mortgage payment.  (*Id.* at 8.)  On June 4, 2004, Sellers informed Plaintiff she would actually need to pay the July and August 2004, mortgage payments, but that the refinancing would close on August 25, 2004, and her new mortgage payments could start in or around October 2004.  (*Id.*)

Since the signing of the mortgage, Plaintiff and Counter have filed for divorce. As a condition of the separation, they agreed to sell the subject residence. (*Id.* at 11.) Plaintiff requested information with regards to the outstanding balance on her mortgage. (*Id.*) On or about March 31, 2005, Plaintiff was sent a fax from Phelan Hallinan & Schmieg, LLP detailing a payoff figure of $233,689.61. (*Id.*) This figure was accepted by Plaintiff and settlement between the Plaintiff and a third party on April 4, 2005, and resulted in Defendant Cendant receiving payment in full from the proceeds of the sale to the third party. (*Id.*)

On April 12, 2005, Defendants filed a mortgage foreclosure action against Plaintiff. (*Id.* at 12.) On or about May 5, 2005, Defendants sent Plaintiff a letter enclosing a check in the amount of $102.29 representing collectively an escrow refund, a private mortgage insurance refund, and a hazard insurance refund due to Plaintiff as a result of the sale of her real property. (*Id.*) Plaintiff then received a letter from Defendant, on or about August 2, 2005, stating that her loan had been paid in full and enclosed was a recorded satisfaction of the mortgage. (*Id.*)

## II.     LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a court to dismiss a complaint for failure to state a claim. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Rock v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir.

1985)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  The court may dismiss a claim "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc.*, 883 F.2d at 247.

### III. LEGAL DISCUSSION

#### A. Count I – Violation of Equal Credit Opportunity Act

Plaintiff claims that Defendant Cendant violated Section 1691(d)(2)[2] of the Equal Credit Opportunity Act ("ECOA") by failing to notify Plaintiff in writing of their reasons for denying her initial credit application. Section 1691(d)(2) provides that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by (A) providing statements of reasons in writing . . . or (B) giving written notification of adverse action . . . ." 15 U.S.C. § 1691(d)(2). The regulations define an "adverse action" as: "(i) [a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer." 12 C.F.R. § 202.2(c)(1). A counteroffer is an offer to extend credit in a different amount, or on other terms than the term requested. *Id.* Thus, the ECOA contemplates that a creditor can take the following actions in response to an application for credit: 1) approve the application; 2) extend a counteroffer; or 3)

---

[2] In her First Amended Complaint, Plaintiff does not specifically cite 15 U.S.C. § 1691(d)(2). (*See* Doc. No. 4 at 12-14.) However, in her Response in Opposition to Defendants' Motion to Dismiss, Plaintiff asserts a violation of Section 1691(d)(2). (Doc. No. 7, Brief at 11.)

notify of "adverse action."  *See* 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 202.2(c)(1).

"Clearly, a counteroffer made within the thirty days is not an adverse action requiring an additional written notice."  *Ricciardi v. Ameriquest Mortgage Co.*, Civ. A. No. 03-2995, 2004 WL 739965, at *2 (E.D. Pa. Mar 15, 2004) (referencing *Diaz v. Va. Hous. Dev. Auth.*, 117 F. Supp. 2d 500, 504 (E.D. Va. 2000) (holding that denial of credit coupled with a counteroffer is excluded from the ECOA's written notice requirement, where the applicant accepts the counteroffer)), *aff'd* 164 Fed. Appx. 221 (3d. Cir. 2006).  *See also Davis,* 383 F.3d at 767 (8th 2004) (explaining that once an application for credit has been submitted, the creditor has thirty days to either approve, deny or make a counteroffer on the application and once that has been done, the time limit for notice of adverse action begins anew should the applicant not accept or use the credit offered).

Plaintiff here was not entitled to notification in writing explaining why her initial application was not accepted because Defendant Cendant responded to her application with a counteroffer within thirty days.  Plaintiff acknowledges receipt of the counteroffer in paragraph 83 of the First Amended Complaint.  (Doc. No. 4 at 12.)  "Neither the ECOA nor Regulation B mandates the form, content or manner in which a creditor must notify an applicant of a counteroffer."  *Ricciardi*, 2004 WL 739965, at *3.  Moreover, Plaintiff accepted the counteroffer and proceeded through settlement.  (Doc. No. 4 at 4-7.)

Plaintiff complains that Defendants failed to notify her of the counteroffer prior to the loan closing.  However, "[n]either the text of the ECOA itself nor the text of relevant regulations require a notice of a counteroffer to be provided prior to the loan closing."  *Ricciardi v. Ameriquest Mortgage Co.*, 164 Fed. Appx. 221, 224 (3d. Cir. 2006).  All that is required is that

the counteroffer be provided within 30 days of the creditor's receipt of the completed application. *See id*. We are satisfied that Cendant did not violate the ECOA when it rejected Plaintiff's initial request for financing and provided Plaintiff with a counteroffer which she accepted. Accordingly, Count I of Plaintiff's First Amended Complaint will be dismissed.

### B.  Dismissal for Lack of Federal Claims

When all federal claims over which a District Court has jurisdiction have been dismissed before trial, pendent state law claims over which the court has supplemental jurisdiction under 28 U.S.C. § 1367(a) may also be dismissed. *See Hedges v. Musco*, 204 F.3d 109, 123-24 (3d Cir. 2000) ("This Court has recognized that 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). We will determine the status of the remaining state law claims after conference with counsel.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH SOSLAU a/k/a | : | |
| ELIZABETH COUNTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 06-1422 |
| PHH MORTGAGE CORP., f/k/a | : | |
| CENDANT MORTGAGE CORP., ET AL. | : | |

**ORDER**

AND NOW, this 18th day of July, 2008, upon consideration of Defendants' Motion To Dismiss Plaintiffs' Amended Complaint, (Doc. No. 5), and all papers submitted in support thereof and in opposition thereto, it is ORDERED that Defendant's Motion is GRANTED as to Count I of the First Amended Complaint and Count I is DISMISSED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge